# COURT OF APPEALS
## DECISION
## DATED AND FILED

## March 31, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2143**

Cir. Ct. No. 2020CV2212

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

KEVIN SCHNEIDER,

    PLAINTIFF-APPELLANT,

UNITEDHEALTHCARE INSURANCE COMPANY AND ILLINOIS DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES,

    INVOLUNTARY-PLAINTIFFS,

    V.

WISCONSIN HEALTH CARE LIABILITY INSURANCE PLAN, ARVIND AHUJA, MD, NEUROSURGERY AND ENDOVASCULAR ASSOCIATES S.C. AND INJURED PATIENTS AND FAMILIES COMPENSATION FUND,

    DEFENDANTS,

MIDWEST MEDICAL INSURANCE COMPANY AND FROEDTERT SOUTH, INC. D/B/A FROEDTERT SOUTH ST. CATHERINE'S MEDICAL CENTER,

    DEFENDANTS-RESPONDENTS.

---

APPEAL from a judgment of the circuit court for Milwaukee County: MICHAEL J. HANRAHAN, Judge. *Affirmed*.

Before White, C.J., Donald, and Geenen, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Kevin Schneider appeals from the circuit court's judgment granted in favor of Froedtert South, Inc. d/b/a Froedtert South St. Catherine's Medical Center ("Froedtert South").   As relevant to this appeal, the circuit court had granted a motion precluding Schneider's expert witness, Paul Hofmann, Dr.P.H.,[1] from testifying about Schneider's negligent credentialing claim against Froedtert South.   The circuit court concluded that Dr. Hofmann's testimony was inadmissible because it failed to meet the reliability standards required by WIS. STAT. § 907.02(1) (2023-24).[2]   The circuit court further concluded that without Dr. Hofmann's testimony, Schneider could not establish the standard of care Froedtert South allegedly breached, and accordingly, it dismissed Schneider's negligent credentialing claim against Froedtert South.

¶2     On appeal, Schneider contends that the circuit court erroneously exercised its discretion when it barred Dr. Hofmann's testimony because Dr. Hofmann's testimony met the ***Daubert***[3] standard for admissibility.   Schneider also alleges that the circuit court's order granting Froedtert South's ***Daubert***

---

[1]  This title refers to an individual who has received a doctorate degree in public health.

[2]  All references to the Wisconsin Statutes are to the 2023-24 version.

[3]  *See **Daubert v. Merrell Dow Pharm., Inc.***, 509 U.S. 579 (1993).

motion contradicted its order denying Froedtert South's motion for summary judgment. For the reasons discussed below, we disagree with Schneider and affirm the circuit court's judgment.

## BACKGROUND

¶3 Schneider brought a lawsuit against neurosurgeon Arvind Ahuja, M.D. and Froedtert South, after Dr. Ahuja performed back surgery on Schneider in December 2017 at Froedtert South. According to the amended complaint, Schneider claims that Froedtert South negligently granted and renewed Dr. Ahuja's credentials and privileges to practice there despite knowing of Dr. Ahuja's "criminal convictions, reprimands, challenges to his license, adverse medical malpractice actions, and loss of privileges at other hospital(s)," and that this negligent credentialing was a cause of Schneider's injuries.

¶4 In support of his negligent credentialing claim, Schneider identified Dr. Hofmann as an expert witness. Dr. Hofmann prepared a report and opined that Froedtert South should not have granted credentials to Dr. Ahuja, and Dr. Hofmann was deposed regarding his opinion. Specifically, Dr. Hofmann criticized the fact that Dr. Ahuja had been credentialed despite his background, which included felony convictions related to tax evasion, false statements on his initial credentialing application and re-credentialing materials, and reprimands and investigations for professional misconduct. Based on his experience, Dr. Hofmann opined that credentialing Dr. Ahuja was negligent.

¶5 During his deposition, Dr. Hofmann, who is not a medical doctor, testified about his educational background and work experience, which included advanced degrees in public health and decades of work as a hospital administrator. He testified that he served as a voting member of a credentialing committee for

3

four-to-six months while he was an interim CEO of a hospital in 1991; that he was a voting member on the board of directors at Emory University Hospital where his involvement in credentialing decisions was "essentially a proforma process" because other committees conducted the investigation and vetting of the applicant; and that he was a member of a credentialing committee at Stanford University where he participated in credentialing conversations, but was not a voting committee member. Dr. Hofmann also testified that his experience did not include reviewing or evaluating credential applications for any physician with a felony conviction or with errors on their application.

¶6 Following Dr. Hofmann's deposition, Froedtert South brought a motion for summary judgment on the negligent credentialing claim, arguing that the undisputed evidence established that it met its duty of care in credentialing Dr. Ahuja. Froedtert South also filed a separate *Daubert* motion to strike Dr. Hofmann as an expert witness, arguing that he did not have the education, training, and experience regarding hospital credentialing to qualify as an expert witness, and that Dr. Hoffman's testimony was conclusory.

¶7 The circuit court denied the summary judgment motion, concluding that Schneider established a dispute of material fact as to whether Froedtert South met its duty in credentialing and re-credentialing Dr. Ahuja because "[a] reasonable inference may be drawn from Dr. Hofmann's testimony that Froedtert South failed to use reasonable care and or judgment when it implemented inappropriate credentialing procedures and processes to grant Dr. Ahuja privileges," and that after viewing the facts in a light most favorable to Schneider, "[i]nferences can be drawn from Dr. Hofmann's testimony that Mr. Schneider would not have been harmed by Dr. Ahuja if he was never granted surgery privileges."

4

¶8      The circuit court also issued an opinion denying Froedtert South's *Daubert* motion.   The court recognized that Schneider's credentialing claim against Froedtert South required expert testimony both about the process of collecting information to make an informed decision about credentialing a doctor, and about the actual decision-making process used to determine whether a doctor should be credentialed based on the information collected.  The circuit court found that Dr. Hofmann was qualified to testify about credentialing processes, generally, and that he would know what constitutes a proper and complete credentialing file and the vetting process of a candidate.  However, the court found that Schneider failed to meet his burden to demonstrate that Dr. Hofmann applied reliable principles and methods to the facts surrounding Froedtert South's allegedly negligent credentialing of Dr. Ahuja.  Specifically, it found that Dr. Hofmann failed to explain how his experience supports his conclusion that Froedtert South was negligent in credentialing Dr. Ahuja, why his experience is a sufficient basis for his opinion, and how the lessons of his experience are reliably applied to the facts of this case.  While the court noted that Dr. Hofmann listed various negative facts about Dr. Ahuja, he gave "a one sentence conclusion that Froedtert South 'failed' when they recommended 'a surgeon who had such a tarnished history,'" without any explanation of his method of weighing and balancing the relevant considerations or how his method was informed by and/or based on his experience.

¶9      In support of its conclusion, the circuit court highlighted Dr. Hofmann's testimony that the work of a credentialing committee involved a judgmental process based upon the information provided by the physician, verification of that information and any references, performance, and clinical competence.  Dr. Hofmann also explained that "there's a whole host of issues,

obviously, that go into determining whether [a physician] should be appointed [or] re-appointed" and that clinical competence "is the most important factor in evaluating credentials." The circuit court noted that, despite his explanation, Dr. Hofmann's testimony and report did not explain how he weighed any of the factors in Dr. Ahuja's case and provided no meaningful context for the negative facts he asserted about Dr. Ahuja.

¶10 For example, the circuit court characterized Dr. Hofmann's reliance on Dr. Ahuja's felony convictions for tax evasion as "remarkably simplistic, in that he does not examine the factual nature of the charge or how such charges relate to the practice of medicine." Even if Dr. Hofmann was concerned only with the ethical implications of these convictions, "it would be meaningful for Dr. Hofmann to have an understanding of the nature of the charges, because different crimes have different levels of ethical culpability[.]" The circuit court explained that "[n]ot only did Dr. Hofmann fail to explore the exact nature of the crimes, but he also failed to describe the quantitative weight that a tax conviction should receive in the credentialing decision, given that 'clinical competence' is the most important factor," and he likewise failed to "in any way explain how his experience with credentialing committees informed his opinion regarding [the] relevance and weight of criminal convictions."

¶11 Similarly, the circuit court noted that Dr. Hofmann failed to elaborate on the significance of Dr. Ahuja being "named" in three malpractice lawsuits. The court determined that being "named" in a lawsuit "should carry almost no weight" given that anyone can file a lawsuit that includes allegations that are later proven to be baseless, and for his part, Dr. Hofmann does not explain why it is significant to be named in a malpractice lawsuit. Dr. Hofmann also failed to examine or explain the nature and significance of any payments made in

conjunction with any of the lawsuits naming Dr. Ahuja, nor did Dr. Hofmann place these lawsuits in context as to their frequency. Finally, as was the case with the felony convictions, Dr. Hofmann failed "to explain how his experience informed him as to how prior malpractice claims should be considered and weighed in a credentialing decision."

¶12 In light of these observations, the circuit court concluded that Dr. Hofmann's testimony did not satisfy the *Daubert* standard. The circuit court ordered the testimony excluded because Dr. Hofmann did not describe any specific method or process that he used to weigh or balance the factors that went into his opinion; did not relate a method or process he used in the field and applied, here, in reaching his opinion; and lacked experience involving a candidate with criminal convictions, prior malpractice claims, and incorrect application statements.

¶13 The circuit court granted Froedtert South's motion and, because Schneider could not establish the standard of care applicable to his claim for negligent credentialing without expert testimony, ordered that the negligent credentialing claim be dismissed.[4]

¶14 Schneider appeals.

### DISCUSSION

¶15 The issue on appeal is whether the circuit court erred when it granted Froedtert South's *Daubert* motion and excluded Dr. Hofmann's expert testimony

---

[4] The medical malpractice claim against Dr. Ahuja is stayed in the circuit court pending the resolution of this appeal.

after concluding that Dr. Hofmann failed to identify the principles and methods he applied to reach his conclusions.[5]

¶16    We independently review whether the circuit court applied the correct legal standard to a motion to exclude expert testimony under WIS. STAT. § 907.02(1).[6] *Seifert v. Balink*, 2017 WI 2, ¶89, 372 Wis. 2d 525, 888 N.W.2d 816. "[A] circuit court has discretion in determining the reliability of the expert's principles, methods, and the application of the principles and methods to the facts of the case," and it erroneously exercises this discretion "when a decision [to admit expert testimony] rests upon a clearly erroneous finding of fact, an erroneous conclusion of law, or an improper application of law to fact." *Id.*, ¶¶ 92-93. We will not reverse the circuit court's decision "if it has a rational basis and was made in accordance with accepted legal standards in view of the facts in

---

[5] Schneider asserts that the circuit court erroneously exercised its discretion because it ruled in its summary judgment order that Dr. Hofmann's testimony was admissible for purposes of creating a factual dispute, but in its subsequent *Daubert* ruling issued the same day, found Dr. Hofmann's testimony inadmissible at trial, thus preventing Schneider from proving the legal elements of his negligent credentialing claim. Schneider contends that these rulings are inconsistent and demonstrate a lack of a logical rationale and failure to rely on the correct legal standards. We disagree. The admissibility of Dr. Hofmann's testimony was not challenged by Froedtert South in its summary judgment motion. Moreover, the circuit court's summary judgment decision is irrelevant to the *Daubert* analysis because the legal standard and burden of proof for a summary judgment motion differ dramatically from those that apply in a *Daubert* challenge.

[6] WIS. STAT. § 907.02(1) states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

8

the record." *State v. Giese*, 2014 WI App 92, ¶16, 356 Wis. 2d 796, 854 N.W.2d 687.

¶17 A hospital has a duty to exercise due care in the selection of its medical staff to investigate the qualifications of applicants and to ensure that their credentialed physicians and surgeons "possess an adequate level of technical skill, competence and ethical principles" and should, in particular, verify the accuracy of the applicant's statements, especially in regard to their medical education, training, and experience. *Johnson v. Misericordia Cmty. Hosp.*, 99 Wis. 2d 708, 735, 744-45, 301 N.W.2d 156 (1981). For Froedtert South to breach its duty to exercise due care in credentialing and re-credentialing Dr. Ahuja, "it must have failed to exercise that degree of care and skill required of a hospital under like or similar circumstances." *Id.* at 738. However, whether the credentialing process and credentialing decisions were made with the required degree of skill and care is not within an ordinary person's experience, and therefore, expert testimony is required. *Id.* at 739.

¶18 Schneider agrees that non-scientific, experience-based testimony "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Seifert*, 372 Wis. 2d 525, ¶73 (quoting Fed. R. Evid. 702 Advisory Committee Note (2000)); *see also **Kumho Tire Co. v. Carmichael**, 526 U.S. 137, 152 (1999). However, the circuit court's gatekeeping function requires more than simply taking the expert's word for it. *Seifert*, 372 Wis. 2d 525, ¶74. Admitting evidence that is connected to the underlying data only by the expert's say-so creates "'too great an analytical gap between the data and the opinion offered,'" rendering the opinion unreliable. *Id.*, ¶75 (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). The court must "focus on the principles and

9

methodology the expert relies upon, not on the conclusion generated." *Giese*, 356 Wis. 2d 796, ¶18.

¶19 Despite his agreement with these legal principles, Schneider never identifies any portion of Dr. Hofmann's testimony that bridges the analytical gap between his experience and his conclusion that Froedtert South negligently credentialed Dr. Ahuja. While Schneider points to pages of deposition testimony to assert that "Dr. Hofmann explained from his experience how he arrived at his opinion regarding Froedtert South's credentialing process," these excerpts contain only statements that Dr. Hofmann is critical of the processes. Dr. Hofmann never states the principles or methods that led to his conclusion, except that Dr. Ahuja should have never been initially credentialed.

¶20 While Schneider contends that Dr. Hofmann explained his criticisms and used a reliable methodology, he fails to point to any testimony in which Dr. Hofmann actually explains his criticisms of the credentialing process or identified the methodology he employed to reach his conclusions. For example, Schneider argues:

> Dr. Hofmann provided a detailed explanation for his opinion that Froedtert South should not have credentialed, appointed and re-appointed Dr. Ahuja to [its] medical staff. First, Dr. Hofmann's report includes an extensive list of supporting facts for his opinion. These supporting facts include the felony convictions, the repeated falsification and incorrect answers on Dr. Ahuja's responses to his application and subsequent reapplications, past medical malpractice cases, past disciplinary actions and the loss of Dr. Ahuja's Medicare status. Dr. Hofmann's deposition testimony provides further detailed explanations of his opinions based on his experience as to why Froedtert South's decision to appoint Dr. Ahuja was incorrect.

Schneider's argument relies on the existence of various negative facts about Dr. Ahuja without explaining the significance of any of those facts in the context of the credentialing process, either in Dr. Hofmann's experience or in general.[7] While Schneider references "detailed explanations" of Dr. Hofmann's opinion, he again identifies nothing in the record to support his claim except an excerpt from Dr. Hofmann's deposition transcript in which he states that "my background and experience has persuaded me that credentialing activity must be done appropriately, comprehensively, and effectively" and further notes that there is a duty to the public. Without an explanation of what "appropriately, comprehensively, and effectively" entails in his experience, nor how the duty is or has been satisfied by the other organizations he has worked with and for, his statement is a conclusion supported only by his say-so.

¶21     In short, we agree with the circuit court's analysis:

> Dr. Hofmann failed to explain how his experience leads to his conclusion that Froedtert South was negligent in making the credentialing decision, why his experience is a sufficient basis for the his [sic] opinion and how the lessons of his experience are reliably applied to the facts of this case. His analysis consisted of listing a number of negative facts concerning Dr. Ahuja and then giving a one sentence conclusion that Froedtert South "failed" when they recommended "a surgeon who had such a tarnished history." Dr. Hofmann provided no explanation of his method of weighing and balancing the consideration or how his method was informed by and/or based on his experience. In short, the [c]ourt agrees with Froedtert

---

[7] For example, although Dr. Hofmann explained that felony convictions can be an automatic disqualifier at other institutions, he acknowledged that Froedtert South did not maintain a policy that automatically disqualified a physician with a felony record from credentials, and he offered no further insight or explanation.

South that Dr. Hofmann's opinion is *ipse dixit*,[8] and as such, it is not admissible under the ***Daubert*** standard.

## CONCLUSION

¶22 For the foregoing reasons, we conclude that the circuit court did not erroneously exercise its discretion when it granted Froedtert South's ***Daubert*** motion. Without expert testimony to establish the standard of care applicable to Schneider's negligent credentialing claim, that claim was properly dismissed.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] The term "ipse dixit" means, essentially, "because I said so." ***State v. Giese***, 2014 WI App 92, ¶19, 356 Wis. 2d 796, 854 N.W.2d 687.